United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS IVESTER PEETS,<br>Petitioner,<br>v.<br>ROBERT W. FOX, Warden,<br>Respondent. | Case No. 17-05275 BLF (PR)<br>**ORDER GRANTING MOTION TO DISMISS; DENYING OTHER MOTION AS MOOT; DENYING CERTIFICATE OF APPEALABILITY**<br><br>(Docket Nos. 12 & 13) |

Petitioner, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state conviction. Respondent filed a motion to dismiss the petition as untimely and as procedurally defaulted. (Docket No. 13, hereafter "Mot.") Petitioner filed an opposition, (Docket No. 16), and Respondent filed a reply, (Docket No. 17). For the reasons set forth below, the motion to dismiss is **GRANTED**.

## I. BACKGROUND

In Santa Clara County Superior Court, Petitioner was found guilty of second degree murder, child endangerment, and desertion of a child; Petitioner was also found to be legally sane at the time he committed his crimes. (Ans. at 1.) On June 18, 2002, Petitioner

was sentenced to 15 years to life in state prison. (*Id.*)

On January 15, 2004, the California Court of Appeal affirmed the judgment on appeal. (Pet. at 1.) On May 19, 2004, California Supreme Court denied a petition for review. (Docket No. 1-1 at 17.)

On May 22, 2005, Petitioner filed a petition for writ of habeas corpus in Santa Clara County Superior Court, challenging his conviction.[1] (Mot. Ex. 1.[2]) On August 19, 2005, the superior court ordered the prosecution to submit an informal response to the petition. (Ex. 2.) On September 2, 2005, the prosecution filed an informal response, (Ex. 3), and on September 20, 2005, Petitioner filed a reply, (Ex. 4). On October 13, 2005, the superior court denied the petition. (Ex. 5.)

On August 22, 2016, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, challenging his conviction. (Ex. 6.) The state appellate court denied the petition on October 31, 2016. (Ex. 7.)

On November 15, 2016, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, challenging his conviction. (Ex. 8.) The state high court denied the petition with citations to *In re Robbins*, 18 Cal.4th 770, 780 (1998) and *In re Clark*, 5 Cal.4th 750, 767-69 (1993). (Ex. 9.)

Petitioner filed the instant federal habeas action on September 6, 2017.

## II. DISCUSSION

### A. <u>Statute of Limitations</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became law on April 24, 1996, imposed for the first time a statute of limitations on

---

[1] For the purposes of this motion, Respondent applies the "mailbox rule" and assumes that Petitioner delivered his state and federal petitions to prison officials on the same dates the proofs of service were signed, or, where no proof of service is attached, the dates the petitions were signed. (Mot. at 2, fn. 2.)

[2] All future references to exhibits are to Respondent's exhibits submitted in support of their motion to dismiss the petition. (Docket No. 13-1, Exs. 1-10.)

2

petitions for a writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1). Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. *Id*. § 2244(d)(2).

"Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). Accordingly, if a petitioner fails to seek a writ of certiorari from the United States Supreme Court, AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires. *See Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (where petitioner did not file petition for certiorari, his conviction became final 90 days after the California Supreme Court denied review); *Bowen*, 188 F.3d at 1159 (same). As the Eighth Circuit put it: "[T]he running of the statute of limitations imposed by § 2244(d)(1)(A) is triggered by either (i) the conclusion of all direct criminal appeals in the state system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or (ii) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ." *Smith v. Bowersox*, 159 F.3d 345, 348 (8th Cir. 1998), *cert. denied*, 525 U.S. 1187 (1999).

Respondent asserts that the relevant subdivision for calculating the one-year statute of limitations in this case is § 2244(d)(1)(A), such that Petitioner had one year from the

3

date the judgment became final after the conclusion of direct review or the time passed for seeking direct review. Because Petitioner did not seek a petition for writ of certiorari from the United States Supreme Court, his one-year limitations period began to run ninety-days after the conclusion of his direct criminal appeal. *See Miranda*, 292 F.3d at 1065. Petitioner's direct appeal concluded on May 19, 2004, when the California Supreme Court denied review. *See supra* at 2. Thus, Petitioner's one-year limitations period began to run ninety days later, on August 17, 2004. Absent tolling, Petitioner had until August 17, 2005, to file a timely federal habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A). Because Petitioner filed the instant petition on September 6, 2017, over twelve years after the limitations period expired on August 17, 2005, it is untimely unless he is entitled to tolling.

### 1. **Statutory Tolling**

The one-year statute of limitations is tolled under § 2244(d)(2) for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A state habeas petition filed before AEDPA's statute of limitations begins to run tolls the limitations period. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). An application for collateral review is "pending" in state court "as long as the ordinary state collateral review process is 'in continuance'—*i.e.*, 'until the completion of' that process." *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002). In other words, until the application has achieved final resolution through the state's post-conviction procedures, by definition it remains "pending." *Id.* at 220.

In California, the state supreme court, intermediate courts of appeal, and superior courts all have original habeas corpus jurisdiction. *Nino v. Galaza*, 183 F.3d 1003, 1006 n.2 (9th Cir. 1999). Although a superior court order denying habeas corpus relief is nonappealable, a state prisoner may file a new habeas corpus petition in the court of appeal. *Id.* If the court of appeal denies relief, the petitioner may seek review in the California Supreme Court by way of a petition for review or may instead file an original habeas petition in the supreme court. *Id.* at 1006 n.3.

4

*Nino* concluded that the limitations period "remains tolled during the intervals between the state court's disposition of a state habeas petition and the filing of a petition <u>at the next state appellate level</u>." *Nino*, 183 F.3d at 1005 (emphasis added). After *Carey*, this means that a state habeas petition is pending "in the absence of undue delay," while a California petitioner "complete[s] a full round of [state] collateral review" all the way to the California Supreme Court. *Biggs v. Duncan*, 339 F.3d 1045, 1048 (9th Cir. 2003) (internal quotation marks omitted). This is true even if the contents of the petitions change, *Delhomme v. Ramirez*, 340 F.3d 817, 819-20 (9th Cir. 2003); *Biggs*, 339 F.3d at 1048 n.1, or if the petitioner files additional or overlapping petitions before the first full round of review is complete, *Delhomme*, 340 F.3d at 820. However, if there is any gap between the completion of one round of review and the commencement of another round of state habeas review, the petitioner is not entitled to tolling during the gap. *See id.* at 821; *Biggs*, 339 F.3d at 1046-47, 1048.

Here, Petitioner filed a state habeas petition on May 22, 2005, which was before the limitations period was due to expire on August 17, 2005. *See supra* at 2. Therefore, he is entitled to statutory tolling for the entire time his first state petition was pending until October 13, 2005, when the court denied it, for a total of 144 days. Accordingly, Petitioner's AEDPA filing deadline was extended from August 17, 2005, to January 6, 2006.

Respondent asserts that Petitioner is not entitled to gap tolling for the time between the denial of his superior court petition and the filing of his second state petition in the state court of appeal because he delayed unreasonably in pursuing collateral relief to the next state appellate court. (Mot. at 4.) Petitioner did not file his petition in the state appellate court until August 22, 2016, which is almost 10 years after the denial of the habeas petition in state superior court. *See supra* at 2. This delay of 10 years is clearly far more than the unjustified or unexplained six-month delay which the Supreme Court found to be an unreasonable under *Evans v. Chavis*, 546 U.S. 189, 201 (2006). (Mot. at 4-5.)

The Court agrees. After *Evans*, the Ninth Circuit held that unexplained and hence

unjustified delays of 115 and 101 days between California habeas petitions were not reasonable. *See Chaffer v. Prosper*, 592 F.3d 1046, 1048 (9th Cir. 2010) (per curiam); *see also Waldrip v. Hall*, 548 F.3d 729, 735-36 (9th Cir. 2008) (holding delay of at least eight months not "reasonable" and thus not subject to tolling); *Gaston v. Palmer*, 447 F.3d 1163, 1167 (9th Cir. 2006) (finding no "gap tolling" during delays of 10, 15 and 18 months between California habeas petitions). In opposition, Petitioner has failed to respond to Respondent's argument that the petition is untimely, and only challenges the motion based on procedural default. (Opp. at 1, 24.) Accordingly, the unexplained and unjustified delay of 10 years is unreasonable, and Petitioner is not entitled to gap tolling for this period of delay.

Furthermore, Petitioner's habeas petitions filed in the state appellate court on August 22, 2016, in the state high court on November 15, 2016, cannot toll the limitations period. A state habeas petition filed after AEDPA's statute of limitations ended cannot toll the limitations period. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed) (holding that Oregon's two-year limitations period for the filing of state habeas petitions does not alter the operation of the AEDPA, even though prisoners who take full advantage of the two-year period will forfeit their right to federal habeas review); *Jiminez*, 276 F.3d at 482 (same). Accordingly, he is not entitled to any tolling for the time his petitions were pending in the state appellate and high courts because they were filed after the limitations period expired on January 6, 20016. Petitioner filed the instant action on September 6, 2017, which was over eleven years after the limitations period expired.

Based on the foregoing the instant petition is untimely, even after taking into account statutory tolling. Accordingly, Respondent's motion to dismiss based on untimeliness should be granted.

**B.     Procedural Default**

Respondent also asserts that claims 1-5 and 7 are procedurally defaulted. (Mot. at

6

5.) This argument is based on the fact that Petitioner's state habeas petition was denied by the California Supreme Court with citations to *In re Robbins*, 18 Cal.4th 770, 780 (1998) and *In re Clark*, 5 Cal.4th 750, 767-69 (1993). (Mot. at 5-6, Ex. 9.)

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In the context of direct review by the United States Supreme Court, the "adequate and independent state ground" doctrine goes to jurisdiction; in federal habeas cases, in whatever court, it is a matter of comity and federalism. *Id.* The procedural default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994).

The post-*Robbins* "untimeliness bar" requires that prisoners who do not file their habeas petitions within a specified time frame establish "either (i) absence of substantial delay; (ii) good cause for the delay; or (iii) that his claims fall within an exception to the bar of untimeliness." *Robbins*, 18 Cal. 4th 770, 784 (1998). Delay "is measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim." *Id.* at 787. While the Ninth Circuit has "yet to determine the minimum amount of time that constitutes a substantial delay," a delay of six years certainly suffices. *Bennett*, 322 F.3d at 579-80.

Here, Petitioner presented claims 1-5 and 7 of the federal petition to the California Supreme Court on state habeas. (Ex. 10.) The state high court rejected Petitioner's state petition without explanation other than a citation to *In re Robbins*, Cal.4th 770, 780 (1998), which clearly indicates a denial as untimely.[3] *See Thorson*, 479 F.3d at 645. (Ex. 9.) Accordingly, the state high court's rejection of these claims based on untimeliness is sufficient basis for this Court to find the claims procedurally defaulted. *Walker v. Martin*,

---

[3] Respondent states that the citation to *In re Clark* indicates that the petition was successive, but states that they only discuss the untimeliness bar as it alone is sufficient to render Petitioner's claims procedurally defaulted. (Mot. at 6, fn. 4.)

7

562 U.S. 307, 316 (2011). Petitioner admitted as much in his petition, wherein he argued that he can show cause and prejudice to overcome procedural default. (Pet. Attach. at xxxi-lvi.)

### 1. **Cause and Prejudice**

Petitioner's claims are procedurally defaulted and barred from federal habeas review unless he can demonstrate: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. *See McClesky v. Zant*, 499 U.S. 467, 494 (1991). The Court first addresses Petitioner's cause and prejudice argument.

The cause standard requires the petitioner to show that "some objective factor external to the defense" prevented petitioner from complying with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. *See id.* at 493-94. Petitioner also must show actual prejudice resulting from the errors of which he complains. *Id.* at 494; *United States v. Frady*, 456 U.S. 152, 168 (1982).

Petitioner asserts three grounds for cause: confiscation of transcripts, (Docket No. 1-2 at 7-14, Docket No. 1-3 at 1-2); a cardiac ailment, (Docket No. 1-3 at 3-7); and visual impairment, (Docket No. 1-3 at 8-10). Respondent argues in their motion that none of these grounds constitutes cause to overcome procedural default. (Mot. at 7-9.)

With respect to the confiscation of transcripts, Petitioner alleges that on separate occasions in 2005, 2008, and 2011, prison officials took his personal property which included copies of his trial transcripts. (*Id.*) Nevertheless, as Respondent asserts, Petitioner was still able to file his first state habeas petition in 2005 with the state superior court, despite the lack of transcripts because he managed to complete a "cursory read-through" of the transcript before it was confiscated. (Mot. at 7-8; Docket No. 1-2 at 8-9.) Furthermore, Petitioner states that he was able to ask his mother for help to pay for copies

8

United States District Court
Northern District of California

1   of the transcripts in 2011 but does not explain why he did not do so sooner. Lastly,

2   although he received the transcripts in 2011, he provides no explanation for why he waited

3   another five years until 2016 to file a second habeas action in the state appellate court. *See*

4   *supra* at 2. In opposition, Petitioner asserts that it was not until he reviewed the 2011 copy

5   of the transcripts that he realized "for the first time" that the prosecution's expert witness

6   was their "true" star witness. (Opp. at 9.) However, as Respondent contends, Petitioner

7   could have become aware of this fact much sooner, such as at trial at which he was present

8   throughout, and later when he conducted a cursory read-through of the transcripts before

9   they went missing in 2005. (Reply at 2.) Accordingly, it cannot be said that that the lack

10  of transcripts constitutes some "objective factor" due to interference by officials that made

11  filing a timely petition impracticable. *Murray v. Carrier*, 477 U.S. at 493-94. Rather, it

12  appears it was Petitioner's own lack of diligence that caused the delay. Lastly, it cannot be

13  said that Petitioner's hesitance to ask his mother for financial assistance to pay for the

14  copies was an "objective factor," (Opp. at 7), particularly since he sets forth no reason

15  beyond his control for the delay in making the request.

16  Secondly, Petitioner's assertion that a "rare cardiac ailment" constitutes cause is

17  also without merit. He asserts that he began suffering chest pains in 2009, which he

18  continued to experience through 2016. (Docket No. 1-3 at 3-4, 5-7.) But as the record

19  shows, his condition did not actually prevent him from working on his habeas petitions

20  during this time since he was still able to file habeas petitions in the state appellate and

21  high courts in 2016. *See supra* at 2. Lastly, as Respondent asserts, the chest pains did not

22  begin until 2009, which was years after his state habeas petitions would have been deemed

23  timely. (Mot. at 8.) Accordingly, Petitioner's cardiac ailment could not have prevented

24  him from complying with the state procedural rule because he had already violated the rule

25  by the time the ailment first appeared in 2009.

26  For the same reasons, Petitioner's final argument that a "visual impairment"

27  constitutes cause is also without merit. Petitioner claims that he became visually impaired

28  in 2011, shortly before receiving replacement copies of his transcripts. (Docket No. 1-3 at

9

8.) However, the impairment, like his cardiac ailment, appeared years after Petitioner had already failed to comply with the state procedural rule. As such, it cannot be said that it constitutes an "objective factor external to the defense" that made compliance with the state procedural rule impracticable.

In opposition, Petitioner asserts that his procedural default was due to the "overlapping combination of all three of the causes" described above, "not merely one of them in isolation." (Opp. at 10.) In support, Petitioner relies on *Maples v. Thomas*, 565 U.S. 266, 132 S. Ct. 912, 914 (2012). However, as Respondent points out, *Maples* is not relevant because it involves abandonment by counsel as an exception to the general rule that negligence by counsel does not qualify as cause. (Reply at 3.) Here, Petitioner makes no allegation of abandonment by counsel, and indeed, his arguments for cause do not involve any act by counsel, negligent or otherwise. Lastly, the impact of these overlapping causes, if any, did not occur until 2011, when his visual impairment first became an issue. But as discussed above, this was years after Petitioner had already failed to comply with the state procedural rule. Accordingly, this argument is without merit.

Based on the foregoing, the Court finds Petitioner has failed to establish cause and prejudice as grounds to avoid procedural default. *See McClesky*, 499 U.S. at 494.

### 2. **Miscarriage of Justice**[4]

Petitioner argues that even if he fails to show cause and prejudice, he meets the fundamental miscarriage of justice exception. (Docket No. 1-3 at 12-14; Docket No. 1-4 at 1.) Specifically, Petitioner contends that his habeas claims show that it is more likely than not that no reasonable juror would have found him sane in the absence of certain errors.[5] (*Id.*; Docket No. 1-23 at 14; Docket No. 1-24, 1-13.)

---

[4] Because Respondent addresses his "fundamental miscarriage of justice" argument, Petitioner's motion "to take judicial notice of, and correct, the court's error" for failing to explicitly mention this argument in its order to show cause is DENIED as moot. (Docket No. 12.)

[5] As Respondent points out, Petitioner noted that he had bench trials for both the guilt and sanity phases. (Mot. at 10, fn. 5.)

If a state prisoner cannot meet the cause and prejudice standard, a federal court may still hear the merits of the successive, abusive, procedurally defaulted or untimely claims if the failure to hear the claims would constitute a "miscarriage of justice." *See McQuiggin v. Perkins*, 569 U.S. 383, 391-92 (2013) (holding that miscarriage of justice (actual innocence) showing applies to claims filed after the AEDPA statute of limitations has run, as well as to successive, abusive and procedurally defaulted claims).

By the traditional understanding of habeas corpus, a "miscarriage of justice" occurs whenever a conviction or sentence is secured in violation of a constitutional right. *See Smith v. Murray*, 477 U.S. at 543-44. However, the Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. at 496); *see Johnson v. Knowles*, 541 F.3d 933, 936-38 (9th Cir. 2008) ("[t]he miscarriage of justice exception is limited to those <u>extraordinary</u> cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt."); *see id.* at 936-37 (holding miscarriage of justice exception did not apply where petitioner conceded his guilt but argued evidence of state's and attorney's misconduct resulted in his being held in prison longer than he should have been); *see, e.g.*, *Wildman v. Johnson*, 261 F.3d 832, 842-43 (9th Cir. 2001) (petitioner must establish factual innocence in order to show that a fundamental miscarriage of justice would result from application of procedural default).

Respondent asserts that Petitioner must do more than merely allege legal innocence; he must submit new evidence showing his actual innocence. (Mot. at 10.) Respondent argues that Petitioner has not submitted any new evidence to establish that he was insane at the time of the crimes, and therefore has failed to show his actual innocence of the crimes of which he was convicted. (*Id.*)

In opposition, Petitioner asserts that both "new evidence" and "newly presented evidence" may satisfy *Schlup*'s actual innocence gateway. (Opp. at 15, 20.) Petitioner is

11

correct. *See Griffin v. Johnson*, 350 F.3d 956, 961 (9th Cir. 2003) ("new" evidence need not be newly available, just newly presented – that is, evidence that was not presented at trial). Petitioner claims that his habeas claims involve "newly presented evidence" attacking the testimony of the prosecution's mental health expert, which would likely have resulted in a successful not guilty by reason of insanity defense. (Opp. at 15, 20-22.) Specifically, Petitioner points to his first habeas claim involving "when/what" evidence as "newly presented evidence." (Opp. at 21-22.) Under that claim, Petitioner describes his trial counsel's notes from an initial interview with him on September 23, 1999, in which counsel noted that Petitioner made statements that the victim (his former girlfriend) was the "incarnation of an evil spirit," that she was "Satan or one of Satan's close allies," and that he "was being confronted by ultimate evil." (Docket No. 1-4 at 12-13; Docket No. 1-35 at 15-16.) Petitioner relies on these notes to counter the testimony of the prosecution's expert witness Dr. Harper, who stated that Petitioner did not mention delusions during a September 30, 1999 interview with the defense expert, but that he mentioned delusions over a year later at a November 3, 2000 interview with the same defense expert. (Mot. at 4.) Dr. Harper testified that a truly delusional person would not be able to control their communication of their delusions, but because Petitioner seemed able to control his expressions of delusion from one meeting to the next, that he was not experiencing delusions at the time of the murder. (*Id.*) Based on trial counsel's notes, Petitioner asserts that this "newly presented evidence" indicates that he did not have such a firm control of his ability to communicate his delusions, which undermines Dr. Harper's conclusion that Petitioner was not delusional at the time of the murder. (Docket No. 1-4 at 8-9.)

In reply, Respondent first argues that Petitioner's self-serving statements made to his attorney hardly qualify as "reliable evidence" showing his actual innocence. (Reply at 4.) Respondent also asserts that hearsay evidence is "particularly suspect" and contrasts it with examples of reliable evidence that meets the actual innocence requirement, i.e., "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." (*Id.*, citing *Schlup*, 513 U.S. at 324.) But even if this hearsay evidence is

12

considered "reliable," it cannot be said that Petitioner has met his burden of demonstrating that more likely than not, in light of the new evidence, no reasonable jury would find him sane beyond a reasonable doubt. *See Griffin*, 350 F.3d at 961. As Respondent points out, there is no indication that the sanity verdict turned solely on Dr. Harper's opinion. On direct appeal, Petitioner argued that he was entitled to a new sanity phase hearing based on several grounds. *See People v. Peets*, No. H024695, slip op. at 1-2 (Cal. Ct. App. Jan. 15, 2004); (Mot. Ex. 10 at Ex. A). In rejecting his arguments and affirming the judgment, the state appellate court discussed all the evidence submitted with respect to Petitioner's sanity, which included extensive defense evidence of Petitioner's purported delusions in September 1999. (*Id.* at 4-9.) Furthermore, the evidence submitted by the prosecution included not only Dr. Harper's testimony, but that of an inmate at the Santa Clara County jail who testified regarding Petitioner's lucid description of the murder and his intent to "play crazy" to avoid prison, and the testimony of a jail official who described Petitioner's behavior at the jail which collaborated the evidence that Petitioner was simply "play[ing] crazy." (*Id.* at 6-7, 15-16.) As such, the Court is not persuaded that no reasonable juror would have found Petitioner sane beyond a reasonable double had the jury heard this additional instance of Petitioner mentioning delusions to his attorney. *See Griffin*, 350 F.3d at 961.

Based on the foregoing, the Court finds that Petitioner's claims are procedurally defaulted based on untimeliness. Because Petitioner has failed to demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice, Respondent's motion to dismiss based thereon must be granted. *Coleman*, 501 U.S. at 750.

### III. CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss the petition, (Docket No. 13), is **GRANTED**. The instant petition for a writ of habeas corpus is **DISMISSED** as

untimely and as procedurally defaulted. Petitioner's motion for judicial notice, (Docket No. 12), is DENIED as moot.

No certificate of appealability is warranted in this case. *See* Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This order terminates Docket Nos. 12 and 13.

**IT IS SO ORDERED.**

Dated: November 14, 2018

*[signature]*
BETH LABSON FREEMAN
United States District Judge

Order Granting Motion to Dismiss; Denying COA
P:\PRO-SE\BLF\HC.17\05275Peets_grant.mtd(sol&pd)

14